[Cite as *Printz v. Printz*, 2013-Ohio-5344.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| KAREN E. PRINTZ | : | |
| | : | Appellate Case No. 2013-CA-2 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 86-DIV-48917 |
| v. | : | |
| | : | |
| TODD A. PRINTZ and JOHN C. | : | (Civil Appeal from Common Pleas |
| PRINTZ, Co-Executors of the Estate : | | Court, Domestic Relations) |
| of ANTHONY L. PRINTZ, Deceased | : | |
| (In substitution for Anthony L. Printz) | : | |
| | : | |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of December, 2013.

. . . . . . . . . . .

SCOTT D. RUDNICK, Atty. Reg. #0000853, Law Office of Scott D. Rudnick, Ltd., 121 West Third Street, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. #0067020, and NICOLE RUTTER-HIRTH, Atty. Reg. #0081004, Rion, Rion & Rion, L.P.A., Inc., 130 West Second Street, Suite 2150, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant, Anthony L. Printz, Deceased

. . . . . . . . . . . .

HALL, J.,

{¶ 1}    Anthony Printz appeals the trial court's order that he sign a Qualified Domestic

Relations Order (QDRO) that gives his former wife, Karen Printz, a joint interest in his pension benefits. Anthony contends that their decree of divorce gives her only a survivorship interest. In light of the evidence, the court's interpretation of the decree's language is reasonable. We affirm.[1]

## FACTS

{¶ 2}   In 1986, Karen filed a complaint for divorce. A referee was appointed who filed a report and recommendation. In the report, the referee found that Anthony and Karen were married in 1965, that Anthony has worked for 22 years as an assembler at Sheller-Globe Corporation, and that Karen has worked for 13 years as a "secretary-teacher's aide" in a school. The referee found that Anthony and Karen entered into a separation agreement as to several matters, including Anthony's pension benefits:

(5) The Plaintiff shall receive a *joint and survivorship benefit* from the Defendant's pension at Sheller-Globe, with the benefits to be determined at the date of the Defendant's retirement. The benefit shall be determined by the following formula:

21/no. Years the Defendant works at Sheller-Globe X 1/2.

The Defendant shall be responsible to provide and execute all documents necessary for the Plaintiff to receive that benefit.

(Emphasis added.) (July 20, 1987 Report and Recommendation, 1). The referee recommended that the separation agreement be found fair and equitable and made an order of the court. The

---

[1] On September 6, 2013, this Court was notified of the death of Appellant, Anthony L. Printz.   Todd A. Printz and John C. Printz, co-executors of the Estate of Anthony L. Printz, were substituted as Appellants in this matter on October 25, 2013 pursuant to App.R. 29(A).

referee also recommended that Anthony pay alimony. Anthony objected to the alimony recommendation, but he did not object to the referee's recital of the separation agreement. While the trial court sustained Anthony's objection and reduced the length of Anthony's alimony obligation, the court "affirmed and approved" the rest of the referee's report. (Aug. 19, 1987 Judgment Entry, 2).

{¶ 3}     In September 1987, the trial court entered a final decree of divorce. Alimony, the decree says, was the only unresolved issue between the parties. "[T]he parties have entered into certain oral agreements regarding property division, which are hereinafter set forth in writing." (Sept. 28, 1987 Judgment Entry-Final Decree of Divorce, 1). The court stated their agreement regarding Anthony's pension benefits this way:

> 5. Defendant shall designate Plaintiff as *survivorship beneficiary* on Defendant's existing Pension Plan through his employer, Sheller-Globe Corporation, for an amount equal to one-half of a fraction in which the numerator is twenty-one (21) years, and the denominator is the number of years Defendant is vested in his Pension Plan, as of the date of his retirement, death, or other qualifying act, by which Defendant is entitled to receive his Pension Plan benefits.

(Emphasis added.) (*Id*. at 2)

{¶ 4}     In 1990, Karen filed a motion asking the trial court to order Anthony to give her information about his pension–specifically, "what date he can withdraw and when he plans to withdraw it." (Oct. 11, 1990 Motion). Karen states in the motion that she is asking "that the Court make such order to protect her pension rights." (*Id*.). The court entered an agreed order that requires Anthony to notify Karen "of any application of withdrawal of retirement monies from

his retirement pay." (Nov. 21, 1990 Agreed Order). The agreed order also states that Anthony "understands his obligation to the Plaintiff for that part of his pension plan as stated in paragraph 5 of the Final Decree and Judgment of Divorce." (*Id*.).

{¶ 5} Anthony retired in November 1990 and in 2008 began receiving pension benefits. In 2012, Karen had a QDRO drafted, but Anthony refused to sign it. He said that the divorce decree's pension provision gives her only a survivorship right–a right to benefits after he dies. Karen filed a motion to enforce the pension provision, asking the trial court to order Anthony to sign the QDRO or to appoint a special commissioner to sign it. The matter was referred to a magistrate. In February 2013, after a hearing at which Karen and Anthony testified, the magistrate issued a decision sustaining Karen's motion. Based largely on the referee's report, the magistrate found that the parties had intended that Karen also have a joint right to Anthony's pension benefits. After quoting the divorce decree's pension provision, the magistrate continued:

> To date, a QDRO has not been filed. Counsel for the Plaintiff recently caused a QDRO to be prepared, pursuant to which the Plaintiff would begin to get her share of the pension immediately, as the Defendant has retired and is currently receiving all of the pension benefits. The Defendant has not signed it, on the advice of counsel, because it is their belief that she is not entitled to any benefits until after the Defendant's death, citing the language in the Decree that says he is to designate her as survivorship beneficiary.
>
> Testimony was given at this hearing by both parties. It was the Defendant's memory that the Plaintiff was not to get any benefits until after his death, and that

all he had to do was to name her as beneficiary. He did not, however do that, and he testified that he has been receiving benefits since 2008.

It was the Plaintiff's understanding that she was to begin to get benefits when the Defendant retired, then to continue to do so after his death.

The Magistrate finds that neither party's testimony is reliable as to their intent and what may or may not have been put on the record, given the fact that neither party even remembers having been in court with the other's lawyer that day or having given any testimony.

As the case is so old, the Magistrate did not have the complete file on the day of the hearing on the current motion. Counsel for the parties agreed that the Magistrate would check to see whether a recording of the original divorce hearing still exists, as well as whether there is anything in the original file which would shed light on the parties' intent. As indicated above, following the original hearing a Report and Recommendation of the Referee was filed. The report reflects that the parties were both in court. The Report specifically enumerated the parties' agreement. Section 5 indicated that the Plaintiff was to receive a <u>joint and survivorship</u> benefit from the Defendant's pension, based on the formula designated in the Decree. The parties also agreed that the Defendant was to be responsible to provide and execute all documents necessary for the Plaintiff to receive the benefit. It was recommended that the agreement be adopted as an order of the court. Although the Defendant objected, the only issue about which he objected was alimony. The court modified the alimony award, but affirmed and

approved the balance of the report.

> The Magistrate finds that the Plaintiff's motion for an order appointing a commissioner to sign the QDRO which has been prepared is well taken. While the Decree itself may be somewhat ambiguous, it is clear from the Report and Recommendation of the Referee that the Plaintiff's benefits were not intended to be limited to taking place only after the Defendant's death.

(Feb. 21, 2013 Magistrate's Decision and Order). The magistrate recommended that if Anthony had not signed the QDRO by a certain date, a special commissioner be appointed to sign it. Anthony filed objections to the magistrate's decision, but the trial court overruled them and adopted the magistrate's decision and recommended order.

**{¶ 6}** Anthony appealed.

## ANALYSIS

**{¶ 7}** The sole assignment of error alleges that the trial court erred in awarding Karen a joint interest in the pension benefits. Anthony argues that by doing so the court disregarded the divorce decree.

**{¶ 8}** "Domestic relations courts may not modify property divisions ordered in a prior decree of divorce. Nevertheless, 'If there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute.'" (Citation omitted.) *Browne v. Browne*, 2d Dist. Greene No. 02CA117, 2003-Ohio-2853, ¶ 12, quoting *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916 (2d Dist.1993). For a reviewing court, the issue is whether the trial court, in clarifying the confusion, abused its discretion–that is,

whether the trial court made the decision with an "'unreasonable, arbitrary, or unconscionable'" attitude. *Browne* at ¶ 13, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 9} The referee's report plainly shows that Anthony and Karen intended Karen to have not only a survivorship right but also a joint right. Anthony never objected to the referee's recital of their pension-benefits agreement, and the trial court expressly "affirmed and approved" it. The 1990 agreed order also suggests a joint-right intent. If Karen thought that she had no right to the benefits until Anthony died, why would she want to know when he can and will begin receiving them while alive? That the trial court thought that Karen also had a right to joint benefits is suggested by the fact that it entered the agreed order at all. Otherwise, why would it bother ordering Anthony to give Karen this information? Given this evidence, the magistrate's interpretation, adopted by the trial court, is reasonable.[2]

{¶ 10} We recognize that because "[a] separation agreement is a contract * * * a court can only consider parol evidence if there are ambiguous terms in the contract." (Citation omitted.) *Robinson v. Robinson*, 2d Dist. Montgomery No. 17562, 1999 WL 1082656, *6 (Dec. 3, 1999). But in this case, we do not consider whether the pension provision is ambiguous. Anthony did not object to the magistrate's using extrinsic evidence to determine the meaning of the pension provision. Indeed, he agreed to let the magistrate use anything in the original case file to clarify how the parties intended to divide his pension benefits. Anthony therefore waived any error concerning the magistrate's use of the referee's report or anything else in the original case

---

[2] It may well be that because Anthony failed to elect a survivorship benefit, as he admits he was required to do, and because has been receiving benefits for several years, the pension administrator may resist modification by court order. That may entail subsequent alteration of the court's order. That issue is not now before us.

file. *See Miller v. Miller*, 5th Dist. Stark No. 2001CA00189, 2002 WL 138498, *4 (Jan. 28, 2002) (concluding that because appellant did not object at trial to the admission of a memorandum written by appellee's trial counsel, which the magistrate relied on to interpret the parties' separation agreement, appellant waived any error concerning its admission); Evid.R. 103(A)(1).

**{¶ 11}** Anthony also argues that the magistrate's decision is not equitable. He contends that awarding Karen a right to joint pension benefits is inequitable because her retirement benefits were never divided. Karen has a pension in the State Teachers' Retirement System (STRS), and neither the referee's report nor the divorce decree mentions it. Anthony says that the court here should have considered her pension. But the trial court here awarded Karen nothing; it merely enforced Anthony and Karen's own agreement, which they presumably believed was equitable. Anthony contends also that because Karen waited to pursue her right to joint benefits until five years after he began to receive them she is barred from doing so by the doctrine of laches.[3] He says that Karen's delay hurts him because he will have to pay her five years of retroactive benefits. And he says that he now has health issues and relies on the amount he currently receives each month, an amount that would be reduced if Karen is allowed to claim her share. Anthony did not raise the laches issue before the trial court, so we will not address it here.

**{¶ 12}** The sole assignment of error is overruled.

**{¶ 13}** The trial court's judgment is affirmed.

---

[3]"'The affirmative defense of laches is an equitable doctrine barring an action because of an unexcused delay that prejudices an adversary.'" (Citation omitted.) *Baker v. Chrysler*, 179 Ohio App.3d 351, 2008-Ohio-6032, 901 N.E.2d 875, ¶31 (2d Dist.), quoting *Dayspring of Miami Valley v. Carmean*, 2d Dist. Clark No. 2007 CA 28, 2007-Ohio-7159, ¶29.

. . . . . . . . . . . . .

WELBAUM and YARBROUGH, JJ., concur.

(Hon. Steve A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Scott D. Rudnick
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Jonathan P. Hein